UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Anthony Wayne Oliphant,<br>            *Plaintiff*,<br><br>        *v.*<br><br>Robert Villano, Mark Sheppard, William Onofrio<br>Craig Appleby, Lieutenant Samperi, Sergeant M.<br>Sigmon, Chief of Police Wydra, Jane Doe Police<br>Dispatcher, Unnamed Officers of the Hamden Police<br>Department, M. Davis, Howze, Smith, Levy,<br>Lieutenant Max Joyner, Unnamed Officers of the<br>New Haven Police Department, Rhonda Marie<br>Dixon, Marc Dixon, Anthony Dixon, Timothy<br>Dixon, Deedra Dixon, James Dixon, James R.<br>Turcotte, Joseph Lamotta, Assistant State's Attorney<br>Richwine, Judge Howard Scheinblum, Judge John<br>Blawie, Judge Elpedio Vitale, Omar Williams, James<br>Dzurenda, Jeffrey McGill, Frederick Levesque,<br>Lieutenant Morris, Unnamed Officers of the<br>Department of Correction, and Unnamed Officers of<br>the Hamden Police Department, Officer Mumin, and<br>Wayne Choinski,<br>            *Defendants*. | Civil No. 3:09cv862 (JBA)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>February 11, 2010 |

INITIAL REVIEW ORDER AND ORDER ON PENDING MOTIONS

Plaintiff Anthony Wayne Oliphant, currently incarcerated at Northern Correctional

Institution ("NCI"), filed this complaint *pro se* under 42 U.S.C. § 12101 *et seq.*,

12131(1)(A)(B), 1981, and 1983; 28 U.S.C. §§ 1331, 1343, and 1367; and 18 U.S.C.

§§ 1951–68. He has moved to appoint counsel [Doc. # 4] amend his complaint [Doc. # 7],

to preserve evidence [Doc. ## 8, 9], for a temporary restraining order [Doc. # 10], and for

equal protection and relief from dilatorious processing [Doc. # 13].

I.      Factual Background

Plaintiff's complaint stems from events that took place between 2004 and 2006 while Plaintiff was serving probation; his 2007 probation violation hearing; and his subsequent incarceration.  The relevant facts, as alleged, are as follows.

In April 2005, while serving Connecticut state probation, Plaintiff began a relationship with Defendant Rhonda Marie Dixon.  (Compl. [Doc. # 1] at ¶ 12.)  On several occasions in September 2006, Mr. Oliphant feared that Ms. Dixon was stealing from him, and because of these concerns, Mr. Oliphant ended his relationship with Ms. Dixon the night of September 24, 2006.  (*Id.* at ¶ 23–26, 29.)  According to Plaintiff, Ms. Dixon "abruptly depart[ed]" from his home at 11 p.m. after he told her he no longer wanted to see her.  He alleges that "[b]ecause of [his] . . . probation status [he] never stopped, or attempted to stop, punch or . . . attack[] Rhonda M. Dixon prior [to] or following her abruptly leaving [his] home."  (*Id.* at ¶ 32.)

Nonetheless, according to Mr. Oliphant, Rhonda Dixon's sister Defendant Deedra Dixon placed an emergency 911 call shortly after Rhonda left his house, informing the police that Plaintiff had attacked Rhonda.  (*Id.* at ¶¶ 34, 35.)  At 1:10 a.m. on September 25, 2006, in response to Deedra Dixon's emergency call, five Hamden police officers arrived at Plaintiff's home, accompanied by Rhonda, Deedra, and their three brothers, Defendants Marc, Anthony, and Timothy Dixon.  Defendant Hamden Police Officer Villano ordered Plaintiff to leave his house, but Plaintiff refused, and the police departed.  (*Id.* at ¶¶ 36–39.)  That evening, Officer Villano and Rhonda Dixon returned, along with more than four additional unidentified Hamden police officers.  (*Id.* at ¶ 41.)  Officer Villano unsuccessfully attempted to kick in the back door of Plaintiff's home, and in response, Mr. Oliphant placed

a 911 call, and he was connected with the Hamden police dispatcher, Defendant Jane Doe # 1, who provided no assistance. (*Id.* at ¶ 45.) Plaintiff does not say how this encounter ended.

Rhonda Dixon and her brothers returned to Mr. Oliphant's home a third time, the night of September 26, 2006. Rhonda's brothers shouted repeatedly that they would "kill" Mr. Oliphant. He again called 911, and Officer Villano again visited Plaintiff's home to investigate. (*Id.* at ¶¶ 46–49.) Defendants New Haven police officers Levy, Howze, and Smith arrived on the scene as well. (*Id.* at ¶ 53.) The police on the scene towed Plaintiff's car, which he had purchased from Rhonda Dixon. (*Id.* at ¶ 55.) On September 28, 2006, Mr. Oliphant filed a "citizen-police complaint" about this incident with Detective Max Joyner of the New Haven Police Department, who never processed or investigated it. (*Id.* at ¶ 56.)

Plaintiff alleges that on October 6, 2006, he was "ambushed" again at his home by Hamden police with their guns drawn, including Officers Shepard and Onofrio. (*Id.* at ¶ 65.) The police had an "antedated" arrest warrant applied for by Defendant Assistant State's Attorney Richwine and signed by Defendant Judge Howard Scheinblum. (*Id.* at ¶ 79.) Mr. Oliphant says that he was in his car when the police arrived, and he was pulled from it by Officer Onofrio, who then "dropped his knee on plaintiff['s] head using his full weight." (*Id.* at ¶ 69.) While lying face-down, Mr. Oliphant says he was repeatedly tasered in his head by Officers Shepard and Onofrio, causing severe bleeding. Mr. Oliphant maintains that he did not resist arrest. (*Id.* at ¶¶ 71–72.)

After being arrested, Mr. Oliphant was taken to Yale New Haven Hospital for medical treatment. (*Id.* at ¶ 75.) He was charged with interference with an officer/resisting arrest, in violation of Conn. Gen. Stat. § 53a-167a; two counts of assaulting public safety and

emergency medical personnel, in violation of Conn. Gen. Stat. § 53a-167c; two counts of threatening in the second degree, in violation of Conn. Gen. Stat. § 53a-62; carrying or selling a dangerous weapon, in violation of Conn. Gen. Stat. § 53-206; and second degree assault, in violation of Conn. Gen. Stat. § 53a-60.  (*Id.* at ¶ 76.)

Mr. Oliphant was arraigned before Judge Scheinblum at Meriden Superior Court on October 10, 2006.  Following his arraignment, Plaintiff was arbitrarily detained in isolation, which was known or should have been known by Defendants Brian Murphy (the Deputy Commissioner of Operations for the Connecticut Department of Corrections ("DOC")) and Frederick Levesque (DOC Director of Classification and Population Management).  (*Id.* at ¶¶ 81–83.)  Plaintiff was placed in "Punitive–Segregation" at New Haven Community Correctional Center before being transferred on October 26, 2006 to Garner Correctional Institution ("GCI"), the DOC's mental health facility.  (*Id.* at ¶¶ 84, 85.)  Mr. Oliphant's state criminal proceedings were transferred from Meriden to New Haven Superior Court in early November, 2006.  (*Id.* at ¶ 86.)  While being returned to his cell in GCI from the New Haven Superior Court on November 17, 2006, Plaintiff was arbitrarily strip-searched and denied dinner by Lieutenant Morris and three unidentified corrections officers at GCI.  (*Id.* at ¶ 89.)  He also alleges that while held at GCI, he was issued four disciplinary reports without an opportunity to make his case (*id.* at ¶ 91) and held in shackles, handcuffs, and a tether chain for more than 28 consecutive hours (*id.* at ¶ 92).

On January 26, 2007, Plaintiff was transferred to NCI.  He says that on July 9, 2007, Defendant New Haven Superior Court Judge John Blawie "illegally allowed" the withdrawal of Diane Polan, his third privately retained attorney.  Mr. Oliphant received permission to make his "first and only" telephone call, to post bail, on September 5, 2007.  (*Id.* at ¶ 95.)  His

probation violation hearing was "delinquently commenced" before Defendant New Haven Superior Court Judge Elpedio Vitale, on September 24, 2007. (*Id.* at ¶ 98.) Before the hearing, he met with Defendant Connecticut State Assistant Public Defender Omar Williams, even though Mr. Oliphant had never made a request for legal counsel. (*Id.* at ¶ 97.)

Mr. Oliphant alleges a litany of problems related to his probation violation hearing. On September 28, 2007, Judge Vitale, Omar Williams, and Joseph Lamotta collusively amended the Information. (*Id.* at ¶ 103.) Despite Mr. Oliphant's requests, Judge Vitale did not grant a continuance so he could retain private legal counsel. (*Id.* at ¶ 99.) Judge Vitale also did not "enforce [his] rights to access" NCI's law library, despite "[P]laintiff's oral/written requests." (*Id.* at ¶ 102.) He alleges that Officer Villano perjured himself on September 28, 2007, but Judge Vitale "call[ed] the court to 'stand-in-recess' . . . to "circumvent [Mr. Oliphant's effort to] orally-motion[] the court to cite [Officer] Villano with perjury." (*Id.* at ¶¶ 104, 105.) Additionally, although Rhonda Dixon testified on the first day of the hearing, Mr. Oliphant's requests to re-examine her later during the hearing were denied. (*Id.* at ¶¶ 108, 109.) Mr. Oliphant further claims that during the hearing, Defendant State's Attorney Joseph Lamotta used "hand-signals" with witnesses, which Judge Vitale allowed. (*Id.* at ¶ 111.)

On October 26, 2007, Mr. Oliphant was found guilty of violating his probation and sentenced to six and one half years incarceration, reinstated from the eight years suspended from his original sentence. (*Id.* at ¶ 113.) He claims that Judge Vitale sentenced him without reviewing a pre-sentence investigation report. (*Id.* at ¶ 114.) Mr. Oliphant remains incarcerated at NCI, and continues to be held in isolation. (*Id.* at ¶¶ 117, 118.) Mr. Oliphant

says that Defendant Jeffrey McGill, Warden of NCI, has allowed him to be "written-up with falsely concocted 'Disciplinary-Reports' by his subordinate staff." (*Id.* at ¶ 119.)  Plaintiff also complains about the conditions in NCI.  He says that he is held in his cell 23 hours per day during the week and 24 hours per day on the weekend. (*Id.* at ¶ 121.)  He also says that he has been limited to one social visit or one telephone call per week and only two outgoing "legal-calls" per month." (*Id.* at ¶ 123.)

Mr. Oliphant alleges that on March 25, 2009, while a family member was visiting, he was given a "false" Disciplinary Report for "violation of program provisions" by Defendant Officer Mumin. (*Id.* at ¶ 127.)  Plaintiff says he was "arbitrarily found guilty" of the Disciplinary Report "[w]ithout 'due process'" at a hearing held on April 21, 2009, which he was not allowed to attend. (*Id.* ¶ 129.)  Although he appealed this finding in the Rockville Superior Court, he claims that his appeal was not processed. (*Id.* ¶¶ 131, 132.)

## II.     Motion to Amend Complaint

Plaintiff has moved to amend the complaint to add Correctional Officer Mumin and District Administrator Wayne Choinski as defendants.  Plaintiff referred to these individuals by name in paragraphs 127–30 of the complaint, but Plaintiff did not list either individual as a Defendant in the caption of the complaint.  Because Plaintiff references Officer Mumin and Mr. Chomski in his Complaint, and because service has yet been made upon any Defendants, the Motion to Amend [Doc. # 7] will be granted.

## III.    Initial Review Order

Plaintiff's  allegations can be construed as claims of false arrest, malicious prosecution, excessive force, and conspiracy, arising from events leading to his arrest by the Hamden Police on October 6, 2006 and events surrounding his subsequent criminal

prosecution and violation of probation hearing.  Plaintiff also includes claims regarding the conditions of his confinement in various Connecticut correctional institutions in which he was incarcerated following his arrest and conviction for violating his probation.  These claims include improper confinement in punitive and administrative segregation in violation of the Eighth and Fourteenth Amendment; illegal strip-searches in violation of the Fourth Amendment; placement in leg shackles and handcuffs for an excessive period of time; issuance of false disciplinary reports; confinement in a cell for twenty-three hours a day; and limited personal visits and legal and social phone privileges in violation of the First and Eighth Amendments.

A.      Standard

In reviewing a *pro se* complaint, the Court assumes the truth of the allegations, and interprets them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citations omitted).  But "'[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).

7

B.      Discussion

      1.      *Section 1981*

Mr. Oliphant has sued Defendants under 42 U.S.C. § 1981(a), which provides in pertinent part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

To state a claim under Section 1981, a plaintiff must allege that he is a member of a racial minority and was subjected to racial discrimination concerning at least one of the activities enumerated in the statute, *i.e.*, he was prevented from making and enforcing contracts, suing and being sued, or giving evidence in connection with a contract claim.  *See Mian v. Donaldson, Lufkin & Jenrette  Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  Plaintiff alleges interference with none of the enumerated activities, nor does he allege that he is a minority and was subject to discrimination.  Thus, his Section 1981 claim fails as a matter of law and is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

      2.      *Sections 1985 and 1986*

Mr. Oliphant also alleges that Defendants violated 42 U.S.C. § 1985.  Only Section 1985(3) can be applicable to this action.[1]  In order to state a claim under Section 1985(3),

---

[1] Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties and Section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings.  Plaintiff is not a federal official and his

8

Plaintiff must allege: (1) the Defendants were part of a conspiracy; (2) the purpose of the conspiracy was to deprive a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act taken in furtherance of the conspiracy; and (4) an injury to his person or property, or a deprivation of a right or privilege. *See Griffin v. Breckenridge*, 403 U.S. 88, 102–03 (1971). Importantly, Plaintiff must show that the conspiracy was motivated by a "racial, or perhaps otherwise class-based invidiously discriminatory animus." *Id.* at 102. Section 1985(3) may not be construed as a "general federal tort law"; it does not provide a cause of action based on the denial of due process or other constitutional rights. *See id.* at 101–02.

Plaintiff alleges no facts suggesting that the actions of any Defendant were taken because of his race or other class-based discriminatory animus. Thus, he fails to state a claim cognizable under Section 1985(3). The section 1985 claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Section 1986 provides relief only if "any of the wrongs conspired to be done, and mentioned in Section 1985" are actually "committed." 42 U.S.C. § 1986. In other words, "a [Section] 1986 claims must be predicated on a valid [Section] 1985 claim." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (quoting *Mian*, 7 F.3d at 1088, *overruled in part*

---

claims are not related to the deterrence of witness participation in judicial proceedings.

*on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).  Because the Court has dismissed Plaintiff's Section 1985 claim, the Section 1986 claim must also be dismissed as well pursuant to 28 U.S.C. § 1915A(b)(1).

### 3. ADA Claims

Plaintiff generally asserts that he brings this action pursuant to the Americans with Disabilities Act ("ADA").  The Supreme Court has held that Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, applies to state prisons and inmates.  *See Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998).  Title II authorizes suits by private citizens for money damages against public entities that violate Section 12132.  *See* 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a).  In order to state a claim under Title II of the ADA, a plaintiff "must demonstrate that (1) [he is a] qualified individual[] with a disability; (2) that the defendants are subject to the ADA; and (3) that [he was] denied the opportunity to participate or benefit from defendants' services, programs, or activities or [was] otherwise discriminated against by defendants, by reason of [his] disability."  *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Although Mr. Oliphant failed to allege specifically that he is a qualified individual with a disability in his complaint, he alleged in his motion for a temporary restraining order that he suffers from post-traumatic stress disorder, for which he has been denied mental health treatment while incarcerated at NCI.  Construing the pleadings liberally, the Court will deem Mr. Oliphant's temporary restraining order allegation as identifying a disability

and denial of treatment program as supporting his ADA claim against Levesque, Murphy,

McGill, Mumin, Choinski, Dzurenda, and Unnamed Department of Correction Officers.

### 4.    RICO Claims

Plaintiff also indicates that he is asserting claims for violations of the civil RICO

statute, 18 U.S.C. §§ 1951–68.  The RICO statute creates a private right of action for treble

damages for "[a]ny person injured in his business or property by reason of a violation of

section 1962."  18 U.S.C. § 1964(c).  To state a valid claim under RICO, a plaintiff must

establish that "a defendant, through the commission of two or more acts constituting a

pattern of racketeering activity, directly or indirectly participated in an enterprise, the

activities of which affected interstate or foreign commerce." *DeFalco v. Bernas*, 244 F.3d 286,

306 (2d Cir.), *cert. denied sub nom., Dirie v. DeFalco*, 534 U.S. 891 (2001).  "Racketeering

activity," as defined in 18 U.S.C. § 1961(1), "includes the commission of specified state-law

crimes, conduct indictable under various provisions within Title 18 of the United States

Code . . . and certain other federal offenses." *Pinnacle Consultants, Ltd. v. Leucadia Nat'l*

*Corp.*, 101 F.3d 900, 904 (2d Cir. 1996).  To establish a pattern, a plaintiff must "plead at least

two predicate acts and must show that the predicate acts are related and that they amount

to, or pose a threat of, continuing criminal activity." *GICC Capital Corp. v. Tech. Fin. Group,*

*Inc.*, 67 F.3d 463, 465 (2d Cir. 1995) (citation omitted).

Plaintiff has alleged no facts to support a claim that Defendants committed one or

more of the federal or state law crimes included in the definition of "racketeering activity"

set forth in 18 U.S.C. § 1961(1). Furthermore, the Court cannot infer such criminal conduct from the facts alleged in the complaint. Thus, there is no factual basis for a RICO claim in any of the above-referenced counts. All RICO claims are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### 5. Section 1983 Claims

Plaintiff asserts Section 1983 claims on a number of grounds. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing that he was deprived of a right protected under federal statute or the Constitution by a person acting under color of state law. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982).

### i. Judges Scheinblum, Blawie, and Vitale

Mr. Oliphant brings Section 1983 claims against Judges Scheinblum, Blawie, and Vitale, for actions they took precipitating his October 2006 arrest and denying him a fair probation violation hearing. Plaintiff alleges that on Superior Court Judge Scheinblum signed a warrant for his arrest on September 28, 2006, arraigned him on October 10, 2006, and during the arraignment raised his bail. Plaintiff alleges that in July 2007, Judge Blawie erroneously permitted his privately retained attorney to withdraw as counsel in his state criminal case. Plaintiff asserts that Judge Vitale unfairly presided over his violation of probation proceeding, failed to rule on multiple motions he filed *pro se*, and appointed an assistant public defender to represent him without his consent, permitted the assistant state's attorney to make hand signals during his questioning of witnesses, and sentenced him

without reviewing a pre-sentence investigation report.

Judges are immune from suit, not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity is not "overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* This immunity applies even to claims that a judge acted erroneously, maliciously, and "in excess of his or her authority." *See Tucker v. Outwear*, 118 F. 3d 930, 932 (2d Cir. 1997) (quoting *Stump v. Sparkman*, 435 U.S. 360, 356 (1978)); *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994) (judicial immunity applicable "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff") (citations and internal quotation marks omitted). Judicial immunity is overcome in only two situations: a judge is not immune from suit for "nonjudicial actions" or for actions that are judicial in nature but taken in the absence of all jurisdiction. *Mireles*, 502 U.S. at 11 (citations omitted).

The allegations against Judges Scheinblum, Vitale, and Blawie all relate to actions taken in relation to Plaintiff's arrest, prosecution, sentencing and probation violation proceeding. These actions are all judicial acts within the jurisdiction of a state court judge. *See Tucker*, 118 F.3d at 932–33 (arraignment, setting bail, issuing warrants are judicial activities); *Schiff v. Dorsey*, 877 F. Supp. 73, 76 (D. Conn. 1994) (exception to judicial immunity inapplicable where claims based upon actions judge took in the course of a probation revocation proceeding, because such actions "clearly fall within a judge's 'judicial

capacity[]"'); *Edwards v. People of State of New York*, 314 F. Supp. 469, 471 (S.D.N.Y. 1970) (the "imposition of sentence was a judicial function to which judicial immunity applies"). Because Judges Scheinblum, Vitale, and Blawie are protected from suit by the doctrine of absolute judicial immunity, Plaintiff's claims for damages against them are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

> ii.   Assistant State's Attorneys Richwine and Lamotta

Plaintiff also names Assistant State's Attorneys Richwine and Lamotta as Defendants. He alleges that during the hearing on his violation of probation, ASA Lamotta improperly filed an amended information.  Plaintiff asserts that ASA Richwine submitted an arrest warrant application to Judge Scheinblum and filed criminal charges against the plaintiff after his arrest.  He also asserts that ASA Richwine does not exist and that Defendant Supervisory State's Attorney James Turcotte should have "known about the anomaly associated with non-existant [*sic*]/ghost . . . State's Attorney . . . Richwine." (Compl. at ¶ 80.)[2]

In addition to the irreconcilable inconsistency of Plaintiff's claims that Attorney Richwine applied for a warrant for his arrest and filed charges against him, and his claim that Attorney Richwine did not exist when the judge issued the arrest warrant, if Attorney Richwine does not "exist" then he or she is not a "person" subject to suit under Section 1983.

---

[2]   The Court addresses the claim against Attorney Turcotte in another part of this review order.

However, the Court will assume the existence of ASA Richwine.[3]  Nonetheless, both

he and ASA Lamotta are immune from suit.  A prosecutor is protected by absolute immunity

from a Section 1983 action seeking damages "for virtually all acts, regardless of motivation,

associated with his function as an advocate."  *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994).

In *Imbler v. Pachtman*, 424 U.S. 409 (1976), the Supreme Court held that a state prosecutor

was absolutely immune from a civil suit to recover damages under Section 1983 because the

prosecutor's conduct "in initiating a prosecution and presenting the State's case" were

"intimately associated with the judicial phase of the criminal process."  *Id.* at 430–31.

Because a prosecutor's conduct in applying for a warrant for an individual's arrest, filing

criminal charges against an individual, and amending an information is closely associated

with the initiation of judicial proceedings and conducting a trial, Assistant State's Attorneys

Richwine and Lamotta are immune from suit.  *See Barr v. Adams*, 641 F. Supp. 547, 549–50

(S.D.N.Y. 1986) (prosecutors absolutely immune for filing information and applying for

arrest warrant), *aff'd*, 810 F.2d 358 (2d Cir. 1987); *Schiff*, 877 F. Supp. at 80 (prosecutor

entitled to absolute immunity for role in plaintiff's probation revocation proceeding)

---

[3] Research has revealed a case, however, that supports the existence of Assistant State's Attorney Richwine.  In  a state habeas petition, *Northington v. Warden*, No. TSR074001729S, 2009 WL 661118 at *3 (Conn. Super. Ct. Feb. 6, 2009), reference is made to a prosecutor by the name of Richwine, who worked in the Judicial District of New Haven at Meriden, GA #7, who prosecuted Northington in 2006 before Judge Scheinblum and was present at Northington's sentencing on October 19, 2006.

(citation omitted).  The claims against defendants Richwine and Lamotta are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### iii.   Assistant Public Defender Omar Williams

Plaintiff also names Omar A. Williams, the Assistant Public Defender who represented him during part of his probation violation hearing and acted as stand-by counsel for the remainder of the probation proceeding.  It is well settled that neither public defenders nor private attorneys are state actors for purposes of Section 1983.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (public defenders do not act under color of state law in criminal proceedings); *Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act under color of state law and therefore are not subject to suit under 42 U.S.C. § 1983.") (internal quotation marks and citations omitted).

Attorneys appointed to represent an individual during a probation revocation proceeding do not generally act under color of state law because representing a client "is essentially a private function . . . for which state office and authority are not needed ." *Polk*, 454 U.S. at 319.

Plaintiff asserts that Assistant Public Defender Williams represented him in connection with a probation revocation proceeding and failed to afford him effective assistance of counsel.  Because a public defender is not considered to be a state actor, Mr.

Oliphant's Section 1983 claim against Mr. Williams is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

> iv.   Fred Levesque, Brian Murphy, and Assistant State's Attorney Turcotte

Plaintiff names Director of Population Management Fred Levesque and Deputy Commissioner Brian Murphy as Defendants.  In paragraphs 82 and 83 of the complaint, Plaintiff asserts only that they knew or should have known of his illegal isolation during his confinement at various prison facilities in Connecticut after his arraignment in October 2006.  Plaintiff also names Supervisory ASA Turcotte as a Defendant and alleges that he knew or should have known of the non-existence of ASA Richwine.

In an action filed pursuant to 42 U.S.C. § 1983, liability is imposed only on an official who personally causes a constitutional violation.  It is "well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).

Defendants Levesque, Murphy, and Turcotte are supervisory officials.  Because "it is well settled . . . that the doctrine of *respondeat superior* standing alone does not suffice to impose liability for damages under section 1983 on a defendant acting in a supervisory capacity," *Hayut v. State Univ. of New York*, 352 F.3d 733, 753 (2d Cir. 2003) (citing *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978), supervisors are not automatically liable under Section 1983 when their subordinates commit a constitutional

tort.  The plaintiff may allege supervisory liability by facts from which one or more of the

following criteria can be inferred:

> an official's (1) failure to take corrective action after learning of a
> subordinate's unlawful conduct, (2) creation of a policy or custom fostering
> the unlawful conduct, (3) gross negligence in supervising subordinates who
> commit unlawful acts, or (4) deliberate indifference to the rights of others by
> failing to act on information regarding the unlawful conduct of subordinates.

*Id.*  In addition, the plaintiff must demonstrate an affirmative causal link between the

inaction of the supervisory official and his injury.  *See Poe v. Leonard*, 282 F.3d 123, 140 (2d

Cir. 2002).

Plaintiff asserts no specific facts suggesting that Defendants Levesque or Murphy

were aware or were made aware of the conditions under which plaintiff was allegedly

confined after he was arraigned in October 2006 other than his conclusory allegation that

they knew or should have known.  They are only mentioned in the two paragraphs of the

complaint referenced above.  In addition, Plaintiff asserts no facts demonstrating that

Supervisory ASA Turcotte was aware or was made aware that the application in support of

the arrest warrant and the information charging Plaintiff with various crimes was signed by

an ASA named Richwine who did not exist.  Thus, Plaintiff has not presented a plausible

claim of supervisory liability, and the claims against Defendants Levesque, Murphy, and

Turcotte are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

          v.        Unnamed New Haven Police Officers

There is no mention of Unnamed New Haven Police Officers in the complaint other

18

than their having arrested a man standing next to Mr. Oliphant on a sidewalk in New Haven on October 4, 2006.  (Compl. at ¶¶ 62, 63.)  Because the Unnamed New Haven Police Officers are only alleged to have apprehend someone standing next to Plaintiff, Mr. Oliphant has failed to state a violation of his own federally or constitutionally protected rights.  The claims against the Unnamed New Haven Police Officer defendants are thus dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

vi.   Hamden and New Haven Police Departments

Plaintiff names the Hamden and New Haven Police Departments as defendants. Municipal police departments are neither municipalities nor persons within the meaning of Section 1983.  *See Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (affirming district court's dismissal of claims against county sheriff's department because, under state law, sheriff's department lacked capacity to be sued); *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005) (dismissing prisoner's Section 1983 action against Waterbury Police Department).  The claims against the New Haven and Hamden Police Departments are therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as lacking an arguable basis in law.

vii.   Officers Appleby, Samperi, Sigmon, and Chief of Police Wydra

Although Officer Appleby, Lieutenant Samperi, Sergeant Sigmon, and Chief of Police Wydra of the New Haven Police Department are listed as parties, Mr. Oliphant alleges no

19

facts implicating them.   The complaint is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1) as to these Defendants for failure to state a violation of any of Plaintiff's federally or constitutionally protected rights.

### viii.   The Dixons

Section 1983 only creates liability for state actors, and the Dixons, who are private individuals, are not claimed to be acting under color of state law.

### viii.   Remaining Defendants

Mr. Oliphant's Section 1983 claims against Defendants Officer Villano, Sheppard, Onofrio, Jane Doe # 1, Max Joyner, M. Davis, Howze, Smith, Robert Levy, Unnamed Hamden Police Officers, James Dzurenda, Jeffrey McGill, Lieutenant Morris, Officer Mumin, Wayne Choinski, and Unnamed Department of Correction Officers remain, insofar as Plaintiff alleges Fourth Amendment claims of false arrest and excessive force; Fourteenth Amendment Due Process and Equal Protection claims; and Eighth Amendment Condition of Confinement claims.

### F.   State Law Claims

Plaintiff has generally asserted claims of assault and battery, which are governed by Connecticut state law.   Supplemental or pendent jurisdiction is a matter of discretion, not of right.   *See United Mine Workers v. Gibbs,* 383 U.S. 715, 715-26 (1966).   "While the statute governing supplemental jurisdiction, 28 U.S.C. § 1367, does not require dismissal of pendent state-law claims where all of the federal claims have been dismissed, *see id.* § 1367(c)(3),"

*Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases), the Second

Circuit "has held, as a general proposition, that 'if [all] federal claims are dismissed before

trial . . ., the state claims should be dismissed as well,'" *Motorola Credit Corp. v. Uzan*, 388

F.3d 39, 56 (2d Cir. 2004) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726

(1966)) (alteration in *Uzan*).  Because all of Plaintiff's claims under federal law have been

dismissed against Defendants New Haven and Hamden Police Departments; Lieutenant

Samperi, Sergeant Sigmon, Chief Wydra, Officer Appelby and Unnamed Officers of the New

Haven Police Department; Attorneys Turcotte, Richwine, Lamotta and Williams; and Judges

Scheinblum, Blawie and Vitale, the Court will not exercise supplemental jurisdiction over

state law claims against them, and those claims are dismissed as to them.

State-law assault and battery claims are also dismissed as to Jane Doe # 1, Joyner,

Dzurenda, and McGill, against whom Mr. Oliphant has alleged no facts that could support

such claims.  Plaintiff's state-law claims remain as to Officer Villano, Sheppard, Onofrio,

Rhonda Dixon, Marc Dixon, Anthony Dixon, Timothy Dixon, Deedra Dixon, James Dixon,

M. Davis, Howze, Smith, Robert Levy, Unnamed Hamden Police Officers, and Lieutenant

Morris.

III.    Motion to Appoint Counsel [Doc. # 4]

Plaintiff's Motion for Appointment of Counsel is denied without prejudice.  The

Second Circuit has made clear that before an appointment is even considered, the indigent

person must demonstrate that he is unable to obtain counsel.  *See Hodge v. Police Officers*,

802 F.2d 58, 61 (2d Cir. 1986), *cert. denied*, 502 U.S. 996 (1991).   Thereafter, "[t]he court may request an attorney to represent any person unable to afford counsel" pursuant to 28 U.S.C. § 1915(e)(1).   "[W]hether the appointment of counsel is necessary rests with the discretion of the court." *In re Martin–Trigona*, 737 F.2d 1254, 1260 (2d Cir. 1984).   This determination turns on consideration of whether the person is indigent, is unable to obtain counsel, and has a legal position that "seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986), *cert. denied sub. nom.*, *Hodge v. Colon*, 502 U.S. 986 (1991).

Mr. Oliphant has failed to demonstrate that he has made any recent attempts to obtain legal representation.  He has only provided a letter from the Inmates' Legal Assistance Program dated November 30, 2006 [Doc. # 4-2] informing him that it does not provide legal assistance in criminal matters and only provides legal assistance in civil cases involving conditions of confinement.  Mr. Oliphant has provided no information of recent efforts to retain legal representation for this complaint, and therefore, his motion is denied.  Any renewed motion for appointment of counsel shall be accompanied by a summary of Mr. Oliphant's attempts to secure the assistance of counsel and the reasons why assistance or representation was unavailable.

IV.    Motions for Order to Preserve Evidence [Docs. ## 8, 9]

Mr. Oliphant has moved for an order preserving all valid and tangible evidence of "writing and recording" associated with this action.  In his renewed motion, he specified as

examples of such evidence: the September 25, 2006 call to 911 accusing him of assaulting Rhonda Dixon; all emergency calls to the Hamden police made from Mr. Oliphant's home between September 25 and October 6, 2006; all telephone and radio communications requesting "towtruck-service" for Mr. Oliphant's home, made between September 25 and October 6, 2006; all Hamden Police radio communications involving Mr. Oliphant, made between September 25, 2006 and October 6, 2006; and all Hamden Police reports dating back to September 25, 2006 and involving Plaintiff.

In considering motions to preserve evidence, courts have applied a balancing test, weighing the specific, significant, and imminent threat of loss or destruction of evidence against the burden that preserving that evidence would impose. *See, e.g.*, *Treppel v. Biovail Corp.*, 233 F.R.D. 363, 370–72 (S.D.N.Y. 2006) (motion for preservation order denied because plaintiff failed to meet burden of demonstrating a significant threat that documents would be destroyed, where threat of future spoliation diminished by creation of back-up of computer servers); *Capricorn Power Co., Inc. v. Siemens Westinghouse Power*, 220 F.R.D. 429, 435 (W.D. Pa. 2004) ("Had there been evidence of attempted damage or destruction of the report or the data compilations used to produce it, the Court's level of concern for the protection of the integrity and existence of the evidence would have been different.").

Because the tapes in question may be recycled or recorded over, and police reports may not be retained after a certain point, and preserving them would impose a minimal

23

burden, Mr. Oliphant's motions for an order to preserve those specific items of evidence will be granted.

V.      Temporary Restraining Order [Doc. # 10]

According to Mr. Oliphant, he has been in Administrative Segregation ("A/S") since January 26, 2007.  (Mem. Supp. Mot. TRO [Doc. # 10-1] at 3.)  Mr. Oliphant says that he was never given a hearing to determine whether he should be placed in A/S.  (*Id.*)  He claims that being held in A/S has exacerbated his diagnosed post-traumatic stress disorder.  (*Id.*)  Moreover, Mr. Oliphant claims that since his arrest on October 6, 2006, he has been denied access to mental-health services and treatment.  (*Id.*)  Plaintiff seeks two forms of injunctive relief: mental-health treatment and release from NCI.

A.      Discussion

The Court has discretion whether to issue a temporary restraining order where "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and the movant "certifies in writing any efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b).  However, given the relief Plaintiff seeks, a temporary restraining order is inappropriate, because "[t]he purpose of a temporary restraining order is to preserve an existing situation *in statu quo* until the court has an opportunity to pass upon the merits of the demand for a preliminary injunction." *Garcia v. Yonkers School Dist.*, 561 F.3d 97, 107 (2d Cir. 2009) (quoting *Pan Am. World*

*Airways, Inc. v. Flight Eng'rs' Int'l Ass'n, PAA Chapter*, 306 F.2d 840, 842 (2d Cir. 1962)); *see also Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1125 (2d Cir. 1989) ("While Rule 65 permits the grant of a temporary restraining order without notice, such an order, as is indicated by the very word 'restraining', should issue only for the purpose of preserving the status quo[.]").  Additionally, a petition for habeas corpus, not a suit under 42 U.S.C. § 1983, is the proper vehicle through which Mr. Oliphant can challenge his detention, *see Abdul-Hakeem v. Koehler*, 910 F.2d 66, 68–69 (2d Cir. 1990) ("'[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.'" (quoting *Preiser v. Rodriguez*, 422 U.S. 475 (1973)), and he has not so petitioned in this action.

Here, because Plaintiff seeks a temporary restraining order that would provide him with affirmative relief *changing* the status quo, specifically providing mental-health treatment, and because he seeks relief that is properly afforded only in a habeas petition, he has not shown "specific facts" that "clearly show" his entitlement to a temporary restraining order, and for this reason his motion for a temporary restraining order will be denied.

VI.     Motion for "Equal Protection" and Relief for Dilatorious Processing [Doc. # 13]

Finally, Mr. Oliphant has moved for equal protection and relief from dilatorious processing through expedited service of his complaint and temporary restraining order upon the Defendants.  Because Mr. Oliphant was not granted leave to proceed *in forma pauperis*

and did not pay his filing fee until February 2, 2010, this Court could not act on his complaint until then.  Additionally, because this Ruling reviews Mr. Oliphant's complaint, denies his temporary restraining order, and provides for service of his complaint upon those remaining Defendants against whom he has alleged sufficient facts, his motion for equal protection and relief from dilatorious processing is moot and will be denied as such.

VII.    Conclusion

Accordingly, Mr. Oliphant's his Motion to Appoint Counsel [Doc. # 4] is DENIED without prejudice to renew; Motion to Amend to add District Administrator Wayne Choinski and Correctional Officer Mumin as Defendants [Doc. # 7] is GRANTED; his Motions for Order  to Preserve Evidence [Docs. ## 8, 9] are GRANTED; his Motion for a Temporary Restraining Order and a Preliminary Injunction [Doc. # 10] is DENIED; and his Motion for Equal Protection and Relief from dilatorious Processing [Doc. # 13] is DENIED. Pursuant to 28 U.S.C. § 1915A(b), all federal claims brought under 42 U.S.C. §§ 1981, 1985, and 1986, and RICO, 18 U.S.C. §§ 1951–68 are DISMISSED; all federal claims brought under 42 U.S.C. § 1983 against Defendants Rhonda Dixon, Marc Dixon, Anthony Dixon, Timothy Dixon, Dee Dixon, James Dixon, the New Haven and Hamden Police Departments, Lieutenant Samperi, Sergeant Sigmon, Chief Wydra, Officer Appelby and Unnamed Officers of the New Haven Police Department, and Supervisory Assistant State's Attorney Turcotte are DISMISSED; and all federal claims brought pursuant to 42 U.S.C. § 1983 against Attorneys Richwine, Lamotta, and Williams and Judges Scheinblum, Blawie, and Vitale, are

DISMISSED.  The Court declines to exercise supplemental jurisdiction over any state-law claims against these Defendants.

## ORDER

The Pro Se Prisoner Litigation Office shall prepare the documents required for service on Defendants Joyner, Davis, Howze, Smith, Levy, Villano, Sheppard, Onofrio, Murphy, Levesque, Dzurenda, McGill, Morris, Mumin, and Choinski and deliver them to the U.S. Marshals Service.  By February 25, 2010, the U.S. Marshals Service shall serve a summons, a copy of the Complaint, and this Order: (1) on Defendants Joyner, Davis, Howze, Smith, and Levy in their official capacities in person to the New Haven City Clerk, 200 Orange Street # 202, New Haven, Connecticut 06510; (2) on Defendants Villano, Sheppard, and Onofrio in their official capacities in person to the Hamden Town Clerk, 2750 Dixwell Ave. # 2, Hamden, Connecticut 06518; and (3) on Defendants Murphy, Levesque, Dzurenda, McGill, Morris, Mumin, and Choinski, in there official capacities, in person to the Office of the Attorney General, 55 Elm Street, Hartford, Connecticut 06141.

By February 25, 2010, the Pro Se Prisoner Litigation Office shall mail a waiver of service of process request packet to each of the following defendants in his or her individual capacity: to Lieutenant Max Joyner, Officer M. Davis (Badge # 399), Officer Howze (Badge # 93), Officer Smith (Badge # 183), and Officer Levy (Badge # 7), care of the New Haven Police Department, 1 Union Avenue, New Haven, Connecticut 06519; and to Officer Robert Villano, Officer Mark Sheppard and Officer William Onofrio, care of the Hamden

27

Police Department, 2900 Dixwell Ave., Hamden, Connecticut 06518.

By February 25, 2010, the Clerk shall verify the current work address for Defendant Murphy, Levesque, Dzurenda, McGill, Morris, Mumin, and Choinski, and mail a waiver of service of process request packet to each of those defendants in his individual capacity at his or her current work address.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).  The Clerk shall serve notice upon the Hamden Police Department.

By February 25, 2010, the Pro Se Prisoner Litigation Office shall send written notice to the Plaintiff of the status of this action, along with a copy of this Order.

The Pro Se Office shall also mail and report to the Court on the status of all waiver requests by April 1, 2010.  If any Defendant fails to return the waiver request, the Pro Se Prisoner Litigation Office shall make arrangements for in-person service by the U.S. Marshals Service and the Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

Although Plaintiff has asserted claims against Jane and John Doe defendants, the Court is unable to serve the Complaint on them as Plaintiff has not identified them by name. Accordingly, Plaintiff is on notice that the Complaint cannot be served on the Jane Doe Hamden Police Department dispatcher described in paragraphs 45 and 49, the John Doe Hamden Police Officers described in paragraphs 40 and 41 of the Complaint and the John

Doe Garner Correctional Institution Officers described in paragraph 89 unless they are identified by name and address. The Court will permit Plaintiff sixty (60) days to conduct discovery in order to ascertain the names of the John and Jane Doe defendants. Plaintiff shall file a notice with the Court indicating the names and addresses of the John and Jane Doe defendants by May 12, 2010. If the Plaintiff fails to file a notice by that date, his claims against the John and Jane Doe defendants will be dismissed without further notice from the court pursuant to Federal Rule of Civil Procedure 4(m).

Because the Court has already granted Plaintiff leave to amend once, he may not amend his Complaint again without first obtaining leave of the Court.

Each defendant shall file his or her response to the Complaint, either an answer or motion to dismiss, by April 22, 2010. If a defendant chooses to file an answer, he or she shall admit or deny the allegations and respond to the cognizable claims recited above. He or she may also include any and all additional defenses permitted by the Federal Rules.

Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by September 13, 2010. Discovery requests need not be filed with the Court.

All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

Pursuant to Local Civil Rule 9(a), a non-moving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion may be granted absent objection.

29

If Plaintiff chooses to appeal this decision, he may not do so *in forma pauperis*, both because such an appeal would not be taken in good faith, *see* 28 U.S.C. § 1915(a)(3), and because at least three of his prior actions have been dismissed for failure to state a claim, 28 U.S.C. § 1915(g) (*see* Order dated Jan. 6, 2010 [Doc. # 14]).


IT IS SO ORDERED.


　　　　　　　　　　　/s/
　　　　　　　　　　　Janet Bond Arterton, U.S.D.J.


Dated at New Haven, Connecticut this 11th day of February, 2010.