UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY W. OLIPHANT,<br>    *Plaintiff*,<br><br>    *v.*<br><br>ROBERT VILLANO, MARK SHEPPARD,<br>WILLIAM ONOFRIO, RONALD GLIFORT,<br>MICHAEL MCNEIL, ERIC GOCLOWSKI,<br>RHONDA DIXON, DEEDRA DIXON, MARC<br>("MICHAEL") DIXON, and TIMOTHY DIXON,<br>    *Defendants*. | Civil No. 3:09cv862 (JBA)<br><br>June 4, 2013 |

**RULING ON DEFENDANTS' MOTION TO DISMISS**

Defendants Michael, Anthony, Timothy, and Rhonda Dixon (collectively the "Dixon defendants") move [Doc. # 231] to dismiss the action against them for failure to commence the action within the three-year statute of limitations required by Conn. Gen. Stat. § 52-577.[1] For the reasons that follow, the Dixon Defendants' motion will be granted and they will be dismissed from the case.

---

[1] Ms. Rhonda Dixon moves [Doc. # 234] to join her co-defendants' motion to dismiss and memorandum in support, and represents that she "rel[ies] fully on the arguments . . . presented on behalf of the co-defendants," and agrees "that the Motion to Dismiss should be based on the Statute of limitations expiring." (R. Dixon Mot. Join [Doc. # 234] at 1.) Ms. Dixon's motion to join in her co-defendants' motion is GRANTED.

I.      **Procedural Background**[2]

On June 1, 2009, Plaintiff commenced suit against twenty five law enforcement officers, several unnamed officers, and six private citizens alleging constitutional violations of excessive force, unlawful seizure and deprivation of procedural due process, and state law claims of assault and intentional infliction of emotional distress ("IIED") arising out of incidents on September 25 and 26, 2006.  After the Court's August 31, 2013 Ruling on Motions for Summary Judgment, the following counts and Defendants remain in the action: Counts One and Two remain against Defendants Villano, Sheppard, Onofrio, Glifort, McNeil, and Goclowski, and Count Five remains against the Dixon defendants and Officer Villano. Count Six remains against Defendants Sheppard, Onofrio, Villano, and the Dixons.

Plaintiff was initially granted [Doc. # 3] leave to proceed *in forma pauperis* ("IFP"), however, this Order was vacated [Doc. # 14] when the Court learned that Plaintiff did not qualify for IFP status. He had misrepresented his past litigation history in his Complaint, where he attested under penalty of perjury that "to the best of [his] knowledge" he had filed no other federal lawsuits in this court "within the past 10-years" (Compl. [Doc. # 1] at 5), when, in fact, Plaintiff's history of frivolous lawsuits disqualified him from proceeding IFP under 28 U.S.C. § 1915(g). Plaintiff subsequently paid the $350.00 filing fee on February 2, 2010.[3] Because this matter is to proceed to trial on some

---

[2] The Court presumes the parties' familiarity with the factual allegations underlying this action. A full recitation of the facts set out in Plaintiff's Amended Complaint is found in the Court's August 31, 2012 Ruling on Motions for Summary Judgment [Doc. # 212].

[3] In the Court's February 11, 2010 Initial Review Order [Doc. # 17], the Court directed the Pro Se Prisoner Litigation Office to mail "a waiver of service of process request packet" to defendants in their individual capacities, but it did not specifically

2

claims against some Defendants, the Court appointed pro bono counsel for Mr. Oliphant, who filed an Amended Complaint [Doc. # 178] in May 2012. Upon discovering that the Dixons were the only remaining Defendants in the action to have not been served, the Court directed the Pro Se Prisoner litigation office to mail waiver of service requests to the Dixons. (*See* Order [Doc. # 182].) No executed waivers were ever returned, and on July 13, 2012, the Court ordered in-person service of process upon the Dixons. On November 9 and 11, 2012, after two requests for extension of time by Plaintiff were granted, the Dixons were served. The Dixons now move to dismiss Counts Five and Six against them, on the grounds that Connecticut's three-year statute of limitations for common law intentional torts ran before they were served and the claims against them are thus barred.

## II.   Discussion

The filing of a state tort action in federal court requires the application of the state's tort statute of limitations, which provides: "No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of." Conn. Gen. Stat. § 52-577. This statute of limitations is an "occurrence statute," meaning that "the limitations period begins to run at the moment the act or omission complained of occurs"; the date that the injury occurred, and the plaintiff's discovery of the injury, are irrelevant to the limitations analysis. *Bello v. Barden Corp.*, 180 F. Supp. 2d 300, 310 (D.Conn. 2002) (citing *Fichera v. Mine Hill Corp.*, 207 Conn. 204, 212 (1988); *Collum v. Chapin*, 40 Conn. App. 449, 451 (1996)).

---

identify the Dixon defendants in its list of Defendants to be mailed waiver of service request packets.

3

Defendants argue that, based on the allegations of the Amended Complaint, the "act . . . complained of" took place on September 25 and 26, 2006, and that consequently, the statute of limitations had run by September 26, 2009, over three years before any of the Dixons were served. Indeed, there is no dispute that the Dixons were served in November 2012 for conduct that is alleged to have occurred in September 2006.

In opposition to Defendants' motion to dismiss, Plaintiff first argues that because the Court's jurisdiction over the state law claims against the Dixons is based on supplemental jurisdiction pursuant to 28 U.S.C. § 1367,[4] the running of the limitations period was "immediately suspended by operation of 28 U.S.C. § 1367(d)" and has yet to expire. (Pl.'s Opp'n [Doc. # 236] at 8.)[5]

Section 1367(d) provides:

> The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d). Defendants contend that this subsection cannot apply, because the legal actions against the Dixons were never actually "commenced" prior to November

---

[4] 28 U.S.C. § 1367(a) provides, in pertinent part:
Except as provided in subsections (b) and (c) . . . , in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

[5] Plaintiff also seems to argue that because his initial complaint against the Dixons included federal claims, those federal claims against the Dixons were "timely commenced." However the Amended Complaint contains no federal claims asserted against the Dixons.

2012, i.e., the Dixons were only served well after the limitations period had run, and therefore the statute of limitations could not have been tolled as to the state tort claims against them. *See Pagan v. Gonzalez*, 113 Conn. App. 135, 139 (2009) ("Legal actions in Connecticut are commenced by service of process.").

The purpose of the tolling provision of § 1367(d) is to "prevent the limitations period on such supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court," *Jinks v. Richland Cnty., S.C.*, 538 U.S. 456, 459, 123 S. Ct. 1667, 1669 (2003), and "occurs in the context of a statute that specifically contemplates only a few grounds for dismissal." *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 545–46 (2002);[6] *see also Centaur Classic Convertible Arbitrage Fund Ltd. v. Countrywide Fin. Corp.*, 878 F. Supp. 2d 1009, 1019 (C.D. Cal. 2011); *Parrish v. HBO & Co.*, 85 F. Supp. 2d 792, 795 (S.D. Ohio 1999) ("[T]he Court disagrees that § 1367(d) operates when the supplemental claim is refiled in federal court, as opposed to state court, and when it is voluntarily dismissed, pursuant to Fed. R. Civ. P. 41(a), as opposed to having been dismissed by the court, pursuant to § 1367(c).") Here, the Court has not dismissed any state law claims pursuant to § 1367(a), (b) or (c), and thus, the § 1367(d) savings provision is inapplicable to Mr. Oliphant's state law claims.

---

[6] In *Raygor*, the Supreme Court listed the following "few grounds for dismissal" as contemplated by § 1367(d):
> The requirements of § 1367(a) make clear that a claim will be subject to dismissal if it fails to "form part of the same case or controversy" as a claim within the district court's original jurisdiction. Likewise, § 1367(b) entails that certain claims will be subject to dismissal if exercising jurisdiction over them would be "inconsistent" with 28 U.S.C. § 1332 . . . . Finally, § 1367(c) . . . lists four specific situations in which a district court may decline to exercise supplemental jurisdiction over a particular claim.

534 U.S. 533, 545 (2002).

Plaintiff's second argument, that he was "relieved of the burden to serve the Dixons" because of his *in forma pauperis* status (Def.'s Opp'n at 9), is also without merit. As discussed *supra*, the Court initially but erroneously granted Mr. Oliphant's motion to proceed IFP [Doc. # 3] in June 2009, but vacated this order in January 2010, once it came "to the Court's attention that Mr. Oliphant has had at least four appeals dismissed by the Second Circuit as lacking any arguable basis either in law or fact." (*See* Order Vacating Order on Motion for Leave to Proceed In Forma Pauperis [Doc. # 14] at 1.)[7] Thus Plaintiff may not and never should have been allowed to enjoy the benefits of IFP status, such as U.S. Marshal service of process. *See* 28 U.S.C. § 1915(d) (For a plaintiff proceeding IFP, "[t]he officers of the court shall issue and serve all process. . . .").

Plaintiff relies on *Pendleton v. Goord*, a recent case from the Eastern District of New York which held that in a circumstance where "the delays in issuing the summons were *due to the plaintiff's pro se and IFP status*, the Court concludes that plaintiff's § 1983 claims are timely." 849 F. Supp. 2d 324, 330 (E.D.N.Y. 2012) (emphasis added) (citing

---

[7] The Court's January 2010 Order vacating Mr. Oliphant's IFP status relied on 28 U.S.C. § 1915(g), which provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

The Court reasoned, "[b]ecause four appeals Mr. Oliphant brought while incarcerated have been dismissed as frivolous, he may not bring the present action without payment of the filing fee absent allegations of "imminent danger of serious physical injury," allegations that the Court concluded were not present in his complaint. (Order Vacating IFP Status at 2.)

*Robinson v. Clipse*, 602 F.3d 605, 608 (4th Cir. 2010) ("In forma pauperis plaintiffs must rely on the district court and the U.S. Marshals Service to effect service of process according to 28 U.S.C. § 1915."); *Paulk v. Dep't of Air Force, Chanute Air Force Base*, 830 F.2d 79, 83 (7th Cir.1987)); *see also Urrutia v. Harrisburg County Police Dep't*, 91 F.3d 451, 453 (3d Cir.1996) ( "An in forma pauperis plaintiff has no control over the amount of time the district court takes to make the § 1915(d) ruling."). *Pendleton*'s federal claims had been timely commenced, but not timely served; here, Plaintiff's state law action was never timely commenced because it was required to be *served* within the three-year period. Further, the cases relied on by Plaintiff each involved plaintiffs whose IFP status was never revoked as inappropriately granted.[8]

Even though "an IFP plaintiff should not be punished for any delay in the issuance of process if he filed the complaint in a timely manner, with a request for leave to proceed IFP," *Pendleton*, 849 F. Supp. 2d at 330, Plaintiff did not qualify as an IFP plaintiff and his delay of more than six years to serve the Dixons should not be attributed to the Court's initial grant of IFP status. Indeed, when Plaintiff filed his lawsuit in June 2009, there were only four months left on the statute of limitations for his state law claims, and had Plaintiff been forthcoming with the Court from the outset about his history of lawsuits (*see* Order Vacating IFP Status at 1 (listing four other federal cases with Mr. Oliphant as plaintiff where the appeals were dismissed by the Second Circuit "as lacking any arguable

---

[8] In *Pendleton*, for example, the statute of limitations ran during the time the Court was considering Plaintiff's motion to proceed *in forma pauperis*. In *Robinson v. Clipse*, the Fourth Circuit concluded that "the period of time before the district court authorized service by the Marshals Service does not count against Robinson for purposes of determining the limitation period." 602 F.3d at 608.

basis either in law or fact")), his IFP application would have been denied from the start.[9] Thus, Plaintiff was not entitled to rely on the Court to effect service on the state law defendants in this action and bore responsibility for insuring that they were timely served in order to commence his action against them, notwithstanding his claim that the delays in serving the Dixons "were completely beyond his control" (Pl.'s Opp'n at 11).

"Statutes of limitation . . . in their conclusive effects are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared." *Order of R.R. Telegraphers v. Ry. Express Agency*, 321 U.S. 342, 348–49 (1944). It is clear that the state law claims against the Dixon Defendants were "allowed to slumber" well past the three–year limitations period defined by Conn. Gen. Stat. § 52-577. "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* The Court finds that the Dixons' right to be free from stale claims should prevail over Plaintiff's belated effort to prosecute Counts Five and Six against them. Accordingly, the Court grants the Dixons' motion to dismiss.

---

[9] Mr. Oliphant's statement that "to the best of [his] knowledge," he had not filed any other lawsuits in the ten years preceding the filing of his June 1, 2009 Complaint is unfounded, as a search of Mr. Oliphant's litigation history on the District's docket shows that Mr. Oliphant had indeed filed four prior civil rights actions within ten years of commencing this case. *See Oliphant v. Hollembaek et al.*, No. 3:04cv523(SRU); *Oliphant et al. v. Armstrong, et al.*, No. 3:02cv947(PCD); *Oliphant et al. v. Wezner et al.*, 3:99cv1894(AWT); *Oliphant v. Toarkz, et al.*, 3:99cv1895(DJS).

### III.	Conclusion

For the reasons discussed above, Defendants' motion [Doc. # 231] to dismiss is GRANTED. The Dixon defendants—Michael, Anthony, Timothy, and Rhonda Dixon—are dismissed from the case and the Clerk is directed to remove them from the case caption.

This case is now ready for trial, and the parties shall file their Joint Trial Memo by July 8, 2013.

IT IS SO ORDERED.

_____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 4th day of June, 2013.